REINHARDT, Circuit Judge,
with whom Judges PREGERSON, WARDLAW, W. FLETCHER, FISHER, PAEZ, and BERZON
join, dissenting from the denial of rehearing en banc:
On multiple occasions in recent months, the State of Arizona has subjected prisoners whose lives it takes — and has subjected this court — to a mockery of the constitutional requirement of due process. In the case of Jeffrey Landrigan, the state an *1095 nounced days before the execution that it planned to use a foreign-source drug and refused “to comply with the district court’s orders to provide ... critical information about the provenance and efficacy of the” drug. Landrigan v. Brewer, 625 F.3d 1132, 1133 (9th Cir.2010) (Wardlaw & W. Fletcher, JJ., concurring in the denial of rehearing en banc). In the case of Donald Beaty, the state announced eighteen hours before the execution that it intended to switch to the use of a drug that it had never tested and in the use of which it had never trained its executioners. Beaty v. Brewer, 649 F.3d 1071, 1072 (9th Cir.2011) (Reinhardt, J., dissenting from the denial of rehearing en banc). In the cases of Robert Towery and Robert Moormann, the state changed its written execution protocol at the last minute, then changed course yet again, informing the court just hours before argument that it was switching the method of execution “because it discovered at the last minute that the originally-planned drugs had expired” a month before. Towery v. Brewer, 672 F.3d 650, 652-53 (9th Cir.2012). In case after case, we have been forced to rely on the ad hoc representations of the state’s counsel in conducting one of the gravest responsibilities that we are asked to perform: approving the state’s plan to take a human life. See, e.g., West v. Brewer; 652 F.3d 1060, 1060-61 (9th Cir.2011). Over and over again, judges of this court have told the state that its cavalier defiance of due process must end. See Landrigan, 625 F.3d at 1133 (Wardlaw & W. Fletcher, JJ., concurring in the denial of rehearing en banc) (“The State’s gamesmanship is unseemly at best, and inhumane at worst.”); Beaty, 649 F.3d at 1072-73 (Reinhardt, J., dissenting from the denial of rehearing en banc) (“The state’s last-minute action serves, whether by design or otherwise, to deprive a capital defendant of a fair opportunity to contest the constitutionality of the new method of death to be used.”); Towery, 672 F.3d at 653 (“Over time, the State of Arizona ... has insisted on amending its execution protocol on an ad hoc basis — through add-on practices, trial court representations and acknowledgments, and last minute written amendments — leaving the courts with a rolling protocol that forces us to engage with serious constitutional questions and complicated factual issues in the waning hours before executions. This approach cannot continue.”). The state either has not heard the message or it has ignored it. It’s hard to believe that it could be the former.
As Judge Berzon thoroughly explains in her partial dissent from the panel’s refusal to stay the execution of Samuel Lopez, the state’s mockery of due process goes far beyond the mere fact of repeated and last-minute changes. The state has systemieally frustrated this court’s ability to determine the constitutionality of its execution procedures by 1) refusing to codify those procedures in a detailed, written protocol; 2) limiting the ability of counsel or witnesses to observe critical parts of the execution process, particularly the setting of intravenous lines; and 3) restricting its documentation of executions so that little useful information is available to counsel, and to prisoners awaiting execution, even after the fact. I have nothing to add to Judge Berzon’s bill of indictment against the state except the observation that if a skilled lawyer were instructing the state on how best to avoid any meaningful review of the constitutionality of its execution procedures, he would be hard pressed to improve on the unconscionable regime that the state has adopted.
Let me close simply by reciting the facts of Robert Towery’s execution, as they are recounted in Judge Berzon’s opinion. Fifty minutes elapsed before the execution team managed to place a primary line in *1096 Towery’s groin. While the line should have been placed in Towery’s femoral vein, an autopsy later showed that his femoral artery was pierced; the record shows that the administration of the execution drug into the femoral artery can cause great pain. It took the team fifty-nine minutes — -just one minute short of the one-hour limit approved in the Baze safe-harbor protocol, Baze v. Rees, 553 U.S. 35, 55, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) — to set a backup line. When that line was finally placed, it was in Towery’s hand, even though the state’s own doctor once testified that the administration of the execution drug through the vein in a prisoner’s hand can cause pain. During this prolonged ordeal, the Director of the Department of Corrections contacted the state Attorney General’s office. Towery, too, apparently sought to contact his lawyers, but the state refused his request. That brings us to the most chilling part of this story: the only reason we even know that Towery asked to speak with his lawyer is that he communicated that fact in code while speaking his last words. Why in code? Because, “[ajccording to the undisputed record in this case, inmates have been told that their microphones will be cut off if they make statements critical of the Arizona Department of Corrections.” Berzon Dissent at 11. As a result, not only was Towery denied his right to counsel; Lopez and all prisoners whom the state may seek to execute in the future were denied their rights to litigate meaningfully whether they, too, may suffer severe pain during the execution process. This is not due process. It is barely even process at all.
If we are to continue the state-sanctioned killing of prisoners, in the United States in 2012, we must find a better way than Arizona’s. The majority’s hollow warning to the state that “Arizona’s ad hoc approach risks going beyond” what is constitutional can only inspire chuckles in the Arizona Attorney General’s and Governor’s offices. By now they must know how feeble the authority of this court is in death penalty cases, at least as we have interpreted it, and how unwilling the Supreme Court is to enforce the Eighth Amendment. For that reason this dissent is likely as pointless as the majority opinion and its futile reminder of our pointless repeated remonstrances to the state. Next time Arizona flouts the Constitution, we might as well remain silent and not continue to pretend that it matters what we say — unless we are willing to take action rather than simply shed more futile tears.